# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

AUTOMOBILI LAMBORGHINI, S.p.A.,
an Italian Company,

    Plaintiff,

v.

SANGIOVESE, LLC, a Nevada Limited
Liability Company, *et al*.,

    Defendants.

Case No. 2:11-CV-1154-KJD-CWH

**ORDER**

Presently before the Court is Plaintiff's Motion to Enforce Injunction and Settlement Agreement, to Hold in Contempt and for Sanctions (#40) (the "Motion to Enforce"). Defendants filed a response in opposition (#43) to which Plaintiff replied (#46/59). Plaintiff also filed Supplemental Declarations (#54/56/58) in support of its Motion. The Court has also considered the evidence presented at the evidentiary hearing held on February 21-22, 2013. In accordance with the Court's order concluding the hearing, Defendants filed a Post-trial Brief (#70) on May 1, 2013. Plaintiff also filed the Declaration of Jacob Bundick (#71) and a Motion to Enforce Injunction and Settlement Agreement(#72). Defendants then filed a response (#73) to which Plaintiff replied (#74).

I. Procedural History

On February 13, 2012, Plaintiff Automobili Lamborghini ("Lamborghini"), the Italian supercar manufacturer, as Plaintiff, and Defendants, entered a Settlement Agreement in this trademark infringement and unfair competition case. Defendants operate a restaurant, retail shop, and automobile gallery at the Palazzo Hotel and Casino, Las Vegas. In accord with the settlement terms, on February 21, 2012, this Court entered a Consent Injunction and Order Approving Consent Injunction (#36)(the "Injunction" or the "Order"). Pursuant to the plain terms of the Injunction, Defendants, their officers, managers, members, principals, agents, employees, servants, successors, licensees, assigns and attorneys, and all those persons or entities in active concert or participation with or controlled by them, became permanently restrained, enjoined and forbidden from:

    a) using Lamborghini's Marks, any colorable imitations thereof, or any marks confusingly similar thereto. Lamborghini's Marks were identified by United States Patent and Trademark Office ("USPTO") registration numbers and embedded graphically in the Injunction (#36 at p. 2);

    b) using the "Dal Toro Mark," any colorable imitations thereof, or any marks confusingly similar thereto. Defendants were ordered to take all necessary and required steps to de-register, remove, withdraw, revoke, expressly abandon and cancel of record the Dal Toro Mark (including as Serial Nos. 77282895 and 85376658) and any pending applications with the USPTO. The Dal Toro Mark was graphically displayed in the Injunction itself (#36 at p.3, ¶ 1):



c) using any and all signage or logos bearing the Dal Toro Mark or Lamborghini's Marks, including, but not limited, in: the Dal Toro Il Ristorante Italiano, Dal Toro Exotic Car Showroom and Dal Toro Merchandise Gallery located in The Palazzo Resort Hotel and Casino located in LasVegas, NV; the website domain www.daltoro.com; and any Dal Toro Restaurant or establishment irrespective of location, including those located in Curacao and Miami, FL (#36 at p. 3, ¶ (c));

d) future manufacture, sale, use offering, advertising or distribution of any and all items bearing the Dal Toro Mark, including but not limited to: business cards, staff shirts, merchandise, accessories, bottled water, hats, glasses, napkins, aprons and any other goods, bearing the Dal Toro Mark (#36 at p. 4, ¶ (d)); and

e) manufacturing, selling, using, offering, advertising or distributing any good, service or product using any simulation, reproduction, counterfeit, copy or colorable imitation of any or all of Lamborghini's Marks. (#36 at p. 4, ¶ (g)).

The Injunction also required that Defendants destroy any and all remaining inventory bearing the Dal Toro Mark within five (5) days. (#36 at p. 4, ¶ (e)).  Defendants were further restrained from taking any action which may tend or actually lead the trade or the public, or individual members thereof, to mistakenly believe, or that would indicate or suggest that Defendants or any of their managers or members or principals or any of its related or affiliated entities are in any way supported, affiliated, authorized, owned, operated, sponsored by, licensed or endorsed by Lamborghini or any Lamborghini authorized Dealership. (#36 at p. 4, ¶ (f)].

Finally, Defendants were restrained from engaging in any activity constituting unfair competition with Lamborghini, or constituting an infringement of any or all of Lamborghini's Marks, or of Lamborghini's rights in, or to use or exploit, any or all of Lamborghini's Marks or engage in any activity that deceives the public and/or the trade, including, without limitation, palming-off or the use of design elements and designations associated with, Lamborghini or Lamborghini's Marks or cause

Lamborghini's Marks to be diluted. (#36 at p. 4, ¶ (h)).  The Injunction concluded with full retention of jurisdiction:

> This Court shall retain jursidiction over the Parties to enforce the terms of the Parties' Settlement Agreement and Defendants' compliance with this Injunction. Either party may enforce same **by motion** to this Court.

(#36 at p. 5) [Emphasis added].

III.  Findings of Fact

Based on the Declarations of the parties and attached exhibits as well as the evidentiary hearing, the Court finds that in direct contravention of the clear and highly specific prohibitions of the Injunction, Defendants have:

a) Displayed the exact infringing and prohibited Dal Toro Mark throughout the interior and exterior of the Dal Toro Il Ristorante Italiano (the "Restaurant"), and related spaces (at the Palazzo Hotel and Casino).  See Plaintiff's Motion to Enforce, Exhibit 2 – Declaration of Diana S. Erb; Exhibit 3 – Declaration of Don Fritsch; Exhibit 4 – Declaration of Rick McDonald;

b) Displayed and used the prohibited Dal Toro Mark on the menus and wine lists of the Restaurant, on its website, (See Exs. 2-4, and the Second Supplemental Declaration of Dawn Reilly (#58)) and on mailed invitations. See Motion to Enforce, Exhibit 5 – Declaration of Jacob D. Bundick; Second Supplemental Declaration of Dawn Reilly (#56).

c) Displayed the Dal Toro Mark on computer screens throughout the Restaurant. See Motion to Enforce, Ex. 2 and Ex. 3;

d) Distributed and used business cards displaying the prohibited Dal Toro Mark. See Motion to Enforce, Ex. 2 and Ex. 4;

e) Displayed and used the prohibited Dal Toro Mark on its Facebook page on coupons and on photos of guests and events, this violation continued until the date of the evidentiary hearing; See Second Supplemental Declaration of Dawn Reilly (#56); and Third Supplemental Declaration of Dawn Reilly (#58);

    f) Displayed and used the prohibited Dal Toro Mark on its website on photos and in videos of guests and events, this violation has continued until the date of Plaintiff's Motion to Enforce Injunction and Settlement Agreement (#72).

Defendants have therefore directly violated the Injunction. However, the Court does not find that use of the blacked-out Del Toro Mark violated the terms of the Injunction.

IV.  Analysis

"It is essential that the trial courts carefully fashion remedies which take all of the economic incentive out of trademark infringement." Playboy Enterprises Inc. v. Baccarat Clothing Co., 692 F.2d 1272, 1274-75 (9th Cir. 1982). Here, to enforce the Injunction and require that Defendants abide this Court's Order, it is necessary to hold Defendants in contempt. Civil contempt is appropriate when a party has "disobe[yed] a specific and definite court order… by fail[ure] to take all reasonable steps within [the party's] power to insure compliance with the court's order." In re Crystal Palace Gambling Hall, Inc., 817 F.2d 1361, 1365 (9th Cir. 1987). Civil contempt sanctions "are employed for two purposes: to coerce the defendant into compliance with the Court's Injunction, and to compensate the complainant for losses sustained." Whittaker Corp. v. Execuair Corp., 953 F.2d 510, 517 (9th Cir. 1992). Here, Plaintiff seeks exactly those remedies as Plaintiff is entitled to compensation for violations sustained since the Injunction was entered, and seeks future compliance with its terms.

Holding Defendants in contempt is the most efficient and appropriate sanction available to Plaintiff, and thus a proper enforcement remedy under the circumstances. "A close analogy to coercive imprisonment is a per diem fine imposed for each day a contemnor fails to comply with an affirmative court order. Like civil imprisonment, such fines exert a constant coercive pressure." Yahoo! v. La Ligue Contre Le Racisme, 433 F.3d 1199, 1250 (9th Cir. 2006). This sanction is appropriate as the fines are avoidable through Defendants' compliance with the Injunction.

In its Order, this Court explicitly retained jurisdiction over the Parties to enforce the terms of the Parties' Settlement Agreement and Defendants' compliance with the terms of the Injunction. The purpose of the Injunction, approved by the Parties and entered by this Court, was to relieve the Parties

of any further prolonged and protracted litigation, and to conclude this matter without the need for additional involvement by this Court. However, due to Defendants' disregard of the prohibitions of the Court's Injunction, the present Motion to Enforce became necessary. Particularly, the Court's determination that a finding of contempt is warranted and necessary is due to Defendants' indifference to the violations noted by Plaintiff. Specifically, the prolonged use of the menu covers emblazoned with the Del Toro Mark and Defendants' failure to remove or edit photographs and videos on its website and Facebook page were major factors leading to the finding of contempt.

Pursuant to the terms of the Settlement Agreement, Plaintiff, by contract, is entitled to attorneys' fees and costs resulting from its efforts to enforce compliance with the Injunction. (Ex. 1 at 6, ¶ 12.) Plaintiff will also be awarded damages in accordance with the Lanham Act. See 15 U.S.C. §1117. The Court notes that looking comprehensively at the violations they were minimal. Were it not for Defendants' torpid reaction to its violations, the Court would not have been inclined to find contempt. Further, Plaintiff showed no evidence of actual confusion by consumers. Additionally, Plaintiff's assertion at the evidentiary hearing that Facebook was a major avenue of Defendants' marketing was without foundation. Plaintiff shall file a motion for damages and attorneys' fees in accordance with this order.

V. Conclusion

Accordingly, IT IS HEREBY ORDERED that Plaintiff's Motion to Enforce Injunction and Settlement Agreement, to Hold in Contempt and for Sanctions (#40/72) is **GRANTED**;

IT IS FURTHER ORDERED that Plaintiff file its motion for damages and attorneys' fees within twenty-one (21) days of the entry of this order.

DATED this 24th day of September 2013.

Kent J. Dawson
United States District Judge