# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

AUTOMOBILI LAMBORGHINI, S.p.A.,
AN ITALIAN COMPANY,

    Plaintiff,

v.

SANGIOVESE, LLC, *et al.*,

    Defendants.

Case No. 2:11-CV-1154-KJD-CWH

**ORDER**

    Presently before the Court is Plaintiff's Motion for Award of Attorneys' Fees, Costs and Damages (#80). Defendants filed a response in opposition (#81) to which Plaintiff replied (#83).

## I. Procedural Background

    On February 13, 2012, Plaintiff Automobili Lamborghini ("Lamborghini") and Defendants entered a Settlement Agreement in this trademark infringement and unfair competition case. Defendants operate a restaurant, retail shop, and automobile gallery at the Palazzo Hotel and Casino, Las Vegas. In accord with the settlement terms, on February 21, 2012, this Court entered a Consent Injunction and Order Approving Consent Injunction (#36)(the "Injunction" or the "Order"). Pursuant to the plain terms of the Injunction, Defendants, their officers, managers, members, principals, agents, employees, servants, successors, licensees, assigns and attorneys, and all those persons or

1  entities in active concert or participation with or controlled by them, became permanently restrained,
2  enjoined and forbidden from:
3      a) using Lamborghini's Marks, any colorable imitations thereof, or any marks confusingly
4      similar thereto. Lamborghini's Marks were identified by United States Patent and Trademark
5      Office ("USPTO") registration numbers and embedded graphically in the Injunction (#36 at p.
6      2);
7      b) using the "Dal Toro Mark," any colorable imitations thereof, or any marks confusingly
8      similar thereto. Defendants were ordered to take all necessary and required steps to de-
9      register, remove, withdraw, revoke, expressly abandon and cancel of record the Dal Toro
10     Mark (including as Serial Nos. 77282895 and 85376658) and any pending applications with
11     the USPTO. The Dal Toro Mark was graphically displayed in the Injunction itself (#36 at p.3,
12     ¶ 1):



19     c) using any and all signage or logos bearing the Dal Toro Mark or Lamborghini's Marks,
20     including, but not limited, in: the Dal Toro Il Ristorante Italiano, Dal Toro Exotic Car
21     Showroom and Dal Toro Merchandise Gallery located in The Palazzo Resort Hotel and
22     Casino located in LasVegas, NV; the website domain www.daltoro.com; and any Dal Toro
23     Restaurant or establishment irrespective of location, including those located in Curacao and
24     Miami, FL (#36 at p. 3, ¶ (c));
25     d) future manufacture, sale, use offering, advertising or distribution of any and all items
26     bearing the Dal Toro Mark, including but not limited to: business cards, staff shirts,

1  merchandise, accessories, bottled water, hats, glasses, napkins, aprons and any other goods,
2  bearing the Dal Toro Mark (#36 at p. 4, ¶ (d)); and
3  e) manufacturing, selling, using, offering, advertising or distributing any good, service or
4  product using any simulation, reproduction, counterfeit, copy or colorable imitation of any or
5  all of Lamborghini's Marks. (#36 at p. 4, ¶ (g)).

The Injunction also required that Defendants destroy any and all remaining inventory bearing the Dal Toro Mark within five (5) days. (#36 at p. 4, ¶ (e)). Defendants were further restrained from taking any action which may tend or actually lead the trade or the public, or individual members thereof, to mistakenly believe, or that would indicate or suggest that Defendants or any of their managers or members or principals or any of its related or affiliated entities are in any way supported, affiliated, authorized, owned, operated, sponsored by, licensed or endorsed by Lamborghini or any Lamborghini authorized dealership. (#36 at p. 4, ¶ (f)].

Finally, Defendants were restrained from engaging in any activity constituting unfair competition with Lamborghini, or constituting an infringement of any or all of Lamborghini's Marks, or of Lamborghini's rights in, or to use or exploit, any or all of Lamborghini's Marks or engage in any activity that deceives the public and/or the trade, including, without limitation, palming-off or the use of design elements and designations associated with, Lamborghini or Lamborghini's Marks or cause Lamborghini's Marks to be diluted. (#36 at p. 4, ¶ (h)). The Injunction also provided that in an action to enforce the agreement the prevailing party was entitled to its attorneys' fees, costs and expenses. The Injunction concluded with full retention of jurisdiction:

> This Court shall retain jursidiction over the Parties to enforce the terms of the Parties' Settlement Agreement and Defendants' compliance with this Injunction. Either party may enforce same **by motion** to this Court.

(#36 at p. 5) [Emphasis added].

On April 13, 2012, Plaintiff filed a motion to enforce the settlement agreement. After substantial briefing, an evidentiary hearing held on February 20, 2013, and subsequent post-hearing briefing, the Court granted the motion to enforce on September 24, 2013. The Court noted that

1 Defendants' violations were minimal, but that Defendants' indifference to correcting the violations
2 warranted a finding of contempt and awarded damages in accordance with the Lanham Act. The
3 parties have now fully briefed the issue of attorneys' fees and damages arising from the violation of
4 the Injunction.

II.  Analysis

    A. Attorneys' Fees and Costs

The parties agree that in determining an award of reasonable attorneys' fees, the Court must consider the traditional "lodestar" calculations. See Hensely v. Eckerhart, 461 U.S. 424, 433 (1983). First, the Court considers a reasonable fee by multiplying the number of hours reasonably expended on the litigation by a reasonable hourly rate. Id. Second, the Court must decide whether to adjust the lodestar amount based on an evaluation of the Kerr factors, Kerr v. Screen Extras Guild, Inc., 526 F.2d 67, 70 (9th Cir. 1975).[1] In this action the parties agree, as does the Court, that the hourly fee charged, $274.00, is reasonable.[2]

However, considering the Kerr factors and Defendants arguments, the Court disagrees that the total hours charged by Plaintiff were reasonable and necessary.  First, while more time and labor was necessary due to Defendants' indifference to correcting the violations identified in the motion to enforce, the actual violations were not egregious (for example, the Dal Toro logo in the background of a picture posted on Facebook, or the Dal Toro logo on a menu cover).  Therefore, the amount involved and results obtained do not fully justify the time and labor required to achieve those results.

---

[1] The *Kerr* factors are: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the requisite skill to perform the legal service; (4) the preclusion of other employment by acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or circumstance; (8) the amount involved and results obtained; (9) the experience, reputation and ability of the attorneys; (10) the "undesirability of the case"; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. Kerr,526 F.2d at 70.

[2] Though the briefing cites $450/hour for principal attorneys and $350/hour for secondary attorneys, Plaintiff was actually charged a discounted, blended rate of $274.00 per hour.  See Docket No.80, Ex. 3.

4

Defendants, conceding the reasonableness of the hourly fee charged, mainly contend that the work charged by Plaintiff's counsel was duplicative and unnecessary. "District courts possess the necessary discretion to adjust the amounts awarded to address excessive and unnecessary effort expended in a manner not justified by the case." Ballen v. City of Redmond, 466 F.3d 736, 746 (9th Cir. 2006). In their opposition, Defendants identified attorneys' fees that are either duplicative, premature or unnecessary. The Court agrees that the fees identified by Defendants should be deducted from the fees sought by Plaintiff given the value of the case and the *de minimis* violations of the Injunction. Plaintiff charged a total of 566 hours of work. The Court finds that half of the fees and expenses charge by Plaintiff reasonable and necessary considering the Kerr factors. Therefore, Plaintiff is awarded attorneys' fees in the amount of $77,542.00 (derived by multiplying the reasonable and necessary hours expended [283] by the reasonable and necessary hourly fee [$274]). Further, Plaintiff is awarded half of the billed costs for a total of $8,264.53.

### B. Damages for Contempt

Having found Defendants in contempt for violating the Injunction, the Court has broad discretion to fashion an appropriate and effective remedy, including an award of contemnor's profits. See Howard Johnson Co. v. Khimani, 892 F.2d 1512, 1519 (11th Cir. 1990); Playboy Enterprises, Inc. v. Baccarat Clothing Co., Inc., 692 F.2d 1272, 1274-75 (9th Cir. 1982). The Court's primary function centers on making any violations unprofitable to the infringing party. Id. Here, even though the Court has found that there was no evidence of actual consumer confusion and that the violations were *de minimis*, the Court is troubled by Defendants' failure to immediately correct violations of the Injunction. In fashioning a remedy the "principles of deterrence would not be served" by permitting Defendants to "keep the fruits of their contempt when they have evaded the injunction" for more than a year. Marshak v. Treadwell, 595 F.3d 478, 496 (3d Cir. 2009). Therefore, the Court has considered awarding Plaintiff Defendants' gross profits during the time period of the violation, 435 days. Having considered the evidence provided in the briefing and having considered Defendants' tax returns *in camera* pursuant to the parties' agreement, the Court finds that awarding Plaintiff $200.00

5

per day during the violation period meets the goals of punishment and deterrence. Though the Defendants show no income for tax purposes during the relevant periods, certain expenses such as amounts recorded as accounting and tax losses involving capital equipment, automobile expenses, professional fees and travel expenses are not considered necessary for the core operations of the business. See Kamar Int'l Inc. v. Russ Berrie and Co., Inc.,752 F.2d 1326 (9th Cir. 1984)(citing examples of items not chargeable against infringer's profits). Plaintiff failed to show that Defendants benefitted directly from the infringement. Thus, awarding Plaintiff Defendants' gross profits would be an excessively punitive action. However, modifying Plaintiff's calculation of Defendants' net profits to disallow unclear or non-core expenses and awarding an adjusted net profit to Plaintiff will deter Defendants from future dilatory conduct. Accordingly, the Court awards damages for Defendants' contempt in the amount of $87,000.00.

III.  Conclusion

Accordingly, IT IS HEREBY ORDERED that Plaintiff's Motion for Award of Attorneys' Fees, Costs and Damages (#80) is **GRANTED in part and DENIED in part**;

IT IS FURTHER ORDERED that the Clerk of the Court enter **JUDGMENT** for Plaintiff and against Defendant in the amount of $85,806.53 in attorneys' fees and costs and for an additional $87,000 in damages for contempt.

DATED this 25th day of September 2014.

_____
Kent J. Dawson
United States District Judge